**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BOBBY JO NEIGHBORS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 15-502 |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| WILLIAM MONAHAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

## I. MEMORANDUM

For the reasons stated below, Defendants' Motion to Dismiss Plaintiff's Complaint

Pursuant to Federal Rule 12(b)(6) or, in the Alternative, Motion to Strike Portions of the

Complaint Pursuant to Federal Rule 12(f) ("Motion to Dismiss") (Doc. 9) will be GRANTED IN

PART and DENIED IN PART.

## BACKGROUND[1]

Bobbi Jo Neighbors ("Plaintiff") is the daughter of Jim Rumble ("Rumble"), a former

chairman of the Monongahela Township Board of Supervisors ("Board of Supervisors" or

"Board"). (Compl. (Doc. 1) ¶¶ 10, 12). In January of 2012, Defendant William Monahan

("Monahan") was elected as a member of the Board of Supervisors. (Id. at ¶ 11). During the

period in which Monahan and Rumble served together on the Board, their meetings "frequently

spiraled into a festival of accusations against Mr. Rumble, which often made it into local

---

[1] The following background facts are taken from Plaintiff's Complaint (Doc. 1). Because the
case is presently before this Court on a motion to dismiss under Federal Rule of Civil Procedure
12(b)(6), the Court accepts as true all allegations in the complaint and all reasonable inferences
that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir.
1989). In addition, the Court views all well pled factual averments and reasonable inferences in
the light most favorable to the non-moving party. Id.

newspapers."  (Id. at ¶ 13).  In July of 2013, Monahan and a colleague ousted Rumble from his position.  (Id. at ¶ 12).

Both before and after his election to the Board of Supervisors, Monahan engaged in a "smear campaign" against Rumble and his family.  (Compl. ¶¶ 11, 15).  This campaign involved false accusations by Monahan about Rumble's activities as a Township Supervisor and about his family's businesses.  (Id. at ¶ 15).  The campaign culminated in Monahan requesting that the Pennsylvania Attorney General and the Greene County District Attorney conduct an unwarranted audit and investigation into Rumble's time log, mileage and gas usage.  (Id.).  Despite the lack of evidence to suggest wrongdoing on Rumble's part, (id. at ¶¶ 16, 18), Monahan persisted in his campaign against Rumble, his family and their businesses.  (Id. at ¶¶ 18-19).  Among other things, Monahan:

- repeatedly contacted the Pennsylvania Department of Environmental Protection ("DEP") regarding alleged or suspected violations on Rumble's property where Rumble Trucking operated its business;

- refused to re-issue Rumble a junk yard permit, which he had held for a number of years;

- encouraged a neighboring property owner to circulate antiquated photographs of Rumble's property and make false accusations concerning the property and the DEP's involvement therewith;

- informed Rumble's business associates that they should not do business with him;

- encouraged and enabled the circulation of false and inaccurate information concerning Rumble's pay as a Township Supervisor;

- challenged Rumble's performance as a Supervisor, designated him a part-time employee, and placed him on light duty, thereby reducing Rumble's wages;

- caused Rumble to miss meetings and then withheld his meeting pay;

- attempted to revoke Rumble's health insurance;

- stated publically that Plaintiff's sister, Lisa Miller, was the reason for Monahan's request for a financial audit and accused her business of wrongdoing;

- repeatedly bullied Plaintiff and her family members in public meetings with the intent to stifle their right to participate in local government proceedings; and

- frustrated Plaintiff's attempts to obtain copies, under Pennsylvania's "Right-to-Know" Law, of certain recordings.

(Id. at ¶ 19).

On October 6, 2014, Plaintiff attended a regular public meeting of the Board of Supervisors. (Compl. ¶ 24). At the conclusion of the meeting, Plaintiff questioned Monahan about the results of the Attorney General's investigation concerning Rumble's work and Monahan's use of his office to bring about the audit. (Id. at ¶¶ 25, 27). Rather than respond to Plaintiff's questions, Monahan "became confrontational and attempted to prevent Plaintiff from conducting further inquiry by contacting the Pennsylvania State Police ('PSP') and swearing out a false affidavit and pressuring the PSP into filing criminal charges against Plaintiff in the hopes of stifling Plaintiff." (Id. at ¶ 27). Although PSP did not want to charge Plaintiff or file a report, Monahan "was adamant and leveraged his capacity as an elected offical to pressure the State Police" into filing a charge of disorderly conduct, (id. at ¶ 29), based on Monahan's false representation that Plaintiff screamed and swore at him. (Id. at ¶¶ 30-31; see Compl. Ex. A (Doc. 1-1)).

At the Magisterial District Court, Monahan repeated his false accusations against Plaintiff and added additional false statements in an attempt to bolster his complaint, even going so far as to count the number of times Plaintiff had allegedly screamed obscenities at him. (Compl. ¶ 32). Supervisor Michael Rudolph falsely corroborated Monahan's version of events. (Id. at ¶ 33). Despite their testimony, Monahan's fabrications were "laid bare" when a recording of the events was played for the Magisterial District Judge, resulting in a finding of not guilty. (Id. at ¶¶ 32, 34).

Plaintiff now brings this suit against Monahan, Monongahla Township, and the Township's Board of Supervisors, alleging: 1) malicious prosecution; 2) abuse of process; 3) retaliation for having engaged in constitutionally protected speech; and 4) deprivation of liberty without due process of law. (Compl. ¶¶ 35-60). Defendants move to dismiss all four counts for failure to state a claim upon which relief can be granted. In the alternative, they move to strike portions of the complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

Claims Against Monongahela Township Board of Supervisors

Defendants move to dismiss all claims against the Board of Supervisors on the ground that this entity is not legally distinct from the Township and cannot be held liable. The Court agrees. See Hankin Family P'ship v. Upper Merion Twp., Civil Action No. 01–1622, 2012 WL 43610, at *23 n.19 (E.D. Pa. Jan. 6, 2012) ("Because the Board of Supervisors is a subunit of Upper Merion Township, a finding of liability against the Board of Supervisors is the same as a finding of liability against the Township."); Klatch-Maynard v. Sugarloaf Twp., Civ. No. 06-845, 2008 WL 3992283, at *4 (E.D. Pa. Aug. 27, 2008) ("As the Board of Supervisors is a subunit of the Township, dismissal of the Board of Supervisors is appropriate as redundant of the claims against the Township.") (citing D'Altilio v. Dover Twp., No. 1:06-CV-1931, 2007 WL

2845073 * 3 (M.D. Pa. Sept. 26, 2007) (explaining that "a plaintiff cannot maintain a suit against both a local government and its constituent departments and agencies.")). Because the Board of Supervisors is not a separate legal entity capable of being sued, all claims against it will be dismissed with prejudice.

Count I – Fourth Amendment Malicious Prosecution

In Count I of the Complaint, Plaintiff asserts a claim for malicious prosecution in violation of her federal constitutional rights.[2] Under 42 U.S.C. § 1983, a private right of action is afforded as against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). Here, there is no question that Monahan acted under color of state law, so the relevant inquiry is whether Plaintiff has pled a plausible violation of her constitutional rights based on her prosecution for disorderly conduct.

"A plaintiff bringing a malicious prosecution claim generally alleges a violation of his or her Fourth Amendment or procedural due process rights." Turzai v. City of Pittsburgh, Civil Action No. 08–1740, 2011 WL 635269, at *10 (W.D. Pa. Feb. 11, 2011) (citing Albright v.

---

[2] The complaint is not clear about whether Plaintiff's malicious prosecution claim is being asserted under federal or state law; however, in her brief in opposition to the pending motion (Doc. 12), Plaintiff discusses her malicious prosecution claim in the context of 42 U.S.C. § 1983. Accordingly, the Court will construe Count I as a claim under § 1983 to redress the alleged violation of Plaintiff's federal constitutional rights.

Oliver, 510 U.S. 266, 273–74 (1994)). In Torres v. McLaughlin, 163 F.3d 169, 172 (3d Cir. 1998), "[t]he United States Court of Appeals for the Third Circuit explained that a § 1983 malicious prosecution claim could be based on a constitutional provision other than the Fourth Amendment, including the procedural component of the Due Process Clause, so long as it was not based on substantive due process." Id. (citing Torres, 163 F.3d at 172). Here, Plaintiff has not asserted a procedural due process violation in connection with Count I of the complaint and, in any event, her well-pleaded averments would not support such a theory. To establish a violation of procedural due process, a plaintiff must demonstrate that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty and property, and (2) the procedures available to him did not provide him with due process of law." Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (internal quotation marks and citation omitted). It is clear from Plaintiffs' own allegations and supporting exhibits that she received constitutionally adequate due process when she was given notice of the disorderly conduct charge and a meaningful opportunity to be heard before the Magisterial District Judge, who found her not guilty. (See Compl. ¶¶ 30, 32-34, 39-41; Compl. Exs. A and B).

Because Plaintiff alleges that her prosecution for disorderly conduct was unsupported by probable cause, (see Compl. ¶¶ 41-42), her malicious prosecution claim is more appropriately construed as implicating her rights under the Fourth Amendment, which is applicable to the states through the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655 (1961) ("Since the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of exclusion as is used against the Federal Government."). In order to state a Fourth

Amendment malicious prosecution claim under § 1983, a plaintiff must allege facts showing that: (1) the defendants initiated a proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

As Defendants point out, Plaintiff has not pled facts that could establish the fifth element of her claim. Indeed, it is clear from the face of her complaint and supporting exhibits that Plaintiff was not arrested or "seized" in connection with her criminal citation for disorderly conduct; rather she was issued a summary offense citation. Although the charge required Plaintiff's attendance at a summary hearing before the Magisterial District Judge, this type of compulsory attendance, by itself, is insufficient to support a malicious prosecution claim. See DiBella v. Borough of Beechwood, 407 F.3d 599, 603 (3d Cir. 2005) (plaintiffs whose only restriction of liberty was their required attendance at municiple court trials did not suffer a "seizure" for purposes of stating a Fourth Amendment malicious prosecution claim). See also Luck v. Mount Air No. 1, LLC, 901 F. Supp. 2d 547, 556 (M.D. Pa. 2012) (noting that, to satisfy the "deprivation of liberty" element, "courts generally require a deprivation more than a mere summons to appear in court"). In Gallo v. City of Phila., 161 F.3d 217 (3d Cir. 1998), the Court of Appeals for the Third Circuit held that the "deprivation of liberty" element of a federal malicious prosecution claim was satisfied where the plaintiff, after being arrested for arson, had posted a $10,000 bond, was prohibited from traveling outside of Pennsylvania and New Jersey, and was required to contact pretrial services on a weekly basis, in addition to attending all court

hearings from arraignment to trial. The court concluded that, "although it was a close question, . . . these restrictions amounted to a seizure." 161 F.3d at 222. In this case, however, no similar allegations have been alleged by Plaintiff that would amount to a Fourth Amendment "seizure."

Plaintiff nevertheless posits that her claim is sufficient because she has alleged a "deprivation" consisting of more than just a mere summons to appear in court. Specifically, Plaintiff alleges that "she was bullied to discourage her from participating in public meetings . . . ; she was denied answers to her legitimate questions . . . ; she had to defend herself at trial . . . ; she had to spend time and money in her defense . . . ; and, she was dissuaded from attending public meetings, pursuing public information and exercising her right to free speech after the citation was issued against her." (Pl.'s Br. Opp. at 10 (Doc. 12) (citations omitted)).

None of these alleged deprivations are sufficient to establish a "seizure" for purposes of a Fourth Amendment malicious prosecution claim. Plaintiff cites no authority for the proposition that being "discouraged" from participating in public meetings, being denied answers to legitimate questions, or being "dissuaded" from exercising free speech rights is somehow commensurate with a Fourth Amendment "seizure," and this Court declines to so hold. Plaintiff's allegations that she had to spend time and money on her defense are equally inadequate. See, e.g., Schuster v. Twp. of N. Sewickley, No. 12-CV-00333, 2012 WL 2862052, at *3 (W.D. Pa. July 11, 2012) (averment that plaintiff incurred legal fees and costs in the amount of $26,280.00 as a result of defending criminal charges did not rise to the level of a Fourth Amendment deprivation of liberty); Barber v. Pennsylvania Dept. of Agric., Civil Action No. 9–1462, 2010 WL 1816760, at *5 (W.D.Pa. May 3, 2010) (finding no Fourth Amendment seizure where plaintiffs alleged only that they received citations, incurred legal fees and expenses, were deprived of personal property, and suffered harm to their reputation); Subriants v.

D'Angelo, 938 F. Supp. 143, 149 (E.D.N.Y. 1996) (dismissing plaintiff's § 1983 malicious prosecution claim where plaintiff's only constraint was having to appear in court at a specified time to respond to two summonses for alleged violation of the town code and incurring related legal expenses); Williams v. Weber, 905 F. Supp. 1502, 1512 (D. Kan. 1995) (plaintiff's allegations that he had to spend time and money preparing a defense and stand trial for two days were insufficient to support a federal malicious prosecution claim).  Accordingly, Plaintiff's malicious prosecution claim fails to state a viable cause of action under Section 1983 and will be dismissed.

Notwithstanding this defect in Count I, Plaintiff seeks leave to replead her malicious prosecution claim.  Pursuant to Federal Rule of Civil Procedure 15(a), a party may amend a pleading once as a matter of course before a responsive pleading is served.  Because the Defendants' Rule 12(b)(6) motion is not a responsive pleading, Plaintiff is entitled to amend her complaint once as a matter of course without leave of this Court.  See Cmty. Country Day Sch. v. Erie Sch. Dist., 618 F. App'x 89, 93 (3d Cir. 2015), reh'g denied (July 21, 2015) (citing Shane v. Fauver, 213 F.3d 113, 115 (3d Cir.2000)).

In doing so, however, Plaintiff must adhere to the requirements of Rule 11.  In order to successfully replead her Fourth Amendment malicious prosecution claim, Plaintiff would need a good faith basis to allege some form of onerous noncustodial restrictions beyond those which have been pleaded here.  See, e.g., Wiltz v. Middlesex Cty. Office of Prosecutor, 249 F. App'x 944, 949 (3d Cir. 2007) ("Being required to post bail, restrictions on travel, and other types of onerous non-custodial restrictions may satisfy the fifth element [of a § 1983 malicious prosecution claim,]" but "[m]erely being required to appear at trial . . . is not a sufficient deprivation of liberty to meet this requirement.") (citing Johnson v. Knorr, 477 F.3d 75, 85 n. 14

(3d Cir. 2007), <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217, 222 (3d Cir.1998), and <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 603 (3d Cir. 2005)); <u>see also</u> <u>DiBella</u>, 407 F.3d at 603 (noting that "[p]retrial custody and some onerous types of pretrial, noncustodial restrictions constitute a Fourth Amendment seizure," but plaintiffs' mere attendance at trial did not).

Even if Plaintiff cannot successfully replead a Fourth Amendment violation, however, she may be able to plead a malicious prosecution claim under Pennsylvania law because the state law claim does not incorporate the federal "deprivation of liberty" element. <u>See</u> <u>Kossler</u>, 564 F.3d at 186 n. 2 (noting that "[t]he first four elements [of a Fourth Amendment malicious prosecution claim] are the same under Pennsylvania law"). Defendants deny that Plaintiff can state a viable malicious prosecution claim under any circumstances because, in their view: (a) Monahan is not legally responsible for Plaintiff's prosecution, and (b) the complaint fails to plead facts showing that the charges were filed without probable cause. Neither argument is persuasive.

First, the mere fact that the criminal citation was issued by PSP does not insulate Monahan from potential liability under a malicious prosecution theory. This is true whether the malicous prosecution claim is brought under Section 1983 or under Pennsylvania common law. <u>See</u> <u>Gallo v. City of Phila.</u>, 161 F.3d at 220 n. 2 (1998) ("Decisions have recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed information from, prosecuting authorities.") (internal quotation marks omitted)); <u>Hess v. Lancaster Cty.</u>, 514 A.2d 681, 683 (Pa. Commw. Ct. 1986) ("A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an

offender to justice, and (b) the proceedings have terminated in favor of the accused.") (quoting

Restatement (2d) of Torts, § 653) (internal quotation marks omitted). For purposes of a state law

claim:

> giving the information or even making an accusation of criminal misconduct does
> not constitute a procurement of the proceedings initiated by the officer if it is left
> entirely to his discretion to initiate the proceedings or not. . . . If, however, the
> information is known by the giver to be false, an intelligent exercise of the
> officer's discretion becomes impossible, and a prosecution based upon it is
> procured by the person giving the false information. In order to charge a private
> person with responsibility for the initiation of proceedings by a public official, it
> must therefore appear that his desire to have the proceedings initiated, expressed
> by direction, request or pressure of any kind, was the determining factor in the
> official's decision to commence the prosecution, or that the information furnished
> by him upon which the official acted was known to be false.

Tomaskevitch v. Specialty Records Corp., 717 A.2d 30, 33 (Pa. Commw. Ct. 1998) (ellipsis in

the original) (quoting Hess, 514 A.2d at 683) (quoting the Restatement (Second) of Torts,

§ 653)). Here, Plaintiff has alleged that the filing of the criminal citation was premised upon

false information that Monahan gave to the Pennsylvania State Police, knowing that such

information was false. (Compl. ¶¶ 27, 29-31, 36, 39). In addition, Plaintiff has stated a plausible

basis for establishing that Monahan's desire to have the proceedings initiated was a "determining

factor in the [officer's] decision to commence the prosecution." Tomaskevitch, 717 A.2d at 33.

The Complaint avers that the state police did not want to file the charge but "Defendant

Monahan was adamant and leveraged his capacity as an elected official to pressure the State

Police into taking his (false) statement and filing a charge of Disorderly Conduct againt

Plaintiff." (Compl. ¶ 29). These averments are sufficient to state a plausible basis for

Monahan's legal culpability under a state law theory of malicious prosecution.

In addition, Plaintiff has adequately alleged that the prosecution was lacking in probable

cause to support the underlying charge. As Plaintiff notes, the Restatement test requires only

that the private citizen who initiates the proceeding (here, Monahan) lack probable cause to

believe that an offense was committed.  See Hess, 514 A.3d at 683 (quoting Restatement (Second) of Torts, § 653).  Plaintiff clearly alleges that Monahan lacked probable cause to believe that Plaintiff engaged in disorderly conduct and made false accusations about her "screaming" and "swearing" at township officials in order to manufacture probable cause for the charge.  (Compl. ¶¶ 30-32, 36, 39, 41-42).

Defendants dispute that Plaintiff has pled facts sufficient to establish that the charging police officer lacked independent discretion and judgment in considering whether to file the summary citation.  Defendants contend that the alleged incident occurred at a public meeting at which an audio tape was made, so the state trooper could obtain information from these other sources and did not rely solely on information provided by Monahan.  In addition, Defendants argue that neither Monahan nor the Township are affiliated with the Pennsylvania State Police, so Monahan could not plausibly have pressured the state trooper into filing the disorderly conduct charge.

Both of Defendants' points concern factual issues that are more appropriately evaluated on a developed evidentiary record.  Consequently, the Court is not persuaded at this stage of litigation that Defendants have articulated a basis for dismissing the malicious prosecution claim with prejudice.  In light of the foregoing considerations, Count I of the complaint will be dismissed without prejudice to Plaintiff's right to file an amended complaint consistent with the principles discussed herein.

Count IV – Fourteenth Amendment Due Process

Count IV of the Complaint asserts a § 1983 claim based on the alleged deprivation of Plaintiff's liberty rights without due process of law.  This claim, like Count I, is premised on the allegation that Defendants maliciously prosecuted Plaintiff in retaliation for her having engaged

in constitutionally protected speech. (Compl. ¶ 58). The Complaint does not specify whether

Count IV is based on procedural or substantive due process principles but, in her brief in

opposition to the pending motion, Plaintiff characterizes Count IV as a substantive due process

claim. (See Pl.'s Br. Opp. (Doc. 12) at 12 ("Plaintiff's claim under the Fourteenth Amendment

is a substantive claim based on Defendants' actions in pushing a malicious prosecution against

her in retaliation for her exercising her right to free speech.")).

Defendants argue that Count IV must be dismissed because Plaintiff has failed to allege

any deprivation of her Fourteenth Amendment due process rights. This Court agrees. "[W]here

a particular amendment provides an explicit textual source of constitutional protection against a

particular source of government behavior, that amendment, not the more generalized notion of

substantive due process must be the guide in analyzing these claims." Albright v. Oliver, 510

U.S. 266, 273 (1994) (internal quotation marks and citation omitted). Accordingly, Plaintiff's

claim must be analyzed as one premised on a Fourth Amendment violation to the extent she is

complaining that her prosecution for disorderly conduct was unsupported by probable cause. See

Albright, 510 U.S. at 274. Because Plaintiff has already attempted to assert a Fourth

Amendment malicious prosecution claim in Count I, her substantive due process claim, to the

extent it is premised on a theory of malicious prosecution, is duplicative of Count I and will be

dismissed.

To the extent Plaintiff's substantive due process claim is premised on Monahan's alleged

retaliatory conduct in response to protected speech, it is duplicative of the First Amendment

retaliation claim set forth in Count III and warrants dismissal on that basis. See Handy-Clay v.

City of Memphis, Tenn., 695 F.3d 531, 547–48 (6th Cir. 2012) (plaintiff's claim that she was

terminated after repeatedly complaining about malfeasance and corruption in the city office was,

in reality, a free speech claim that could not be brought under the generic substantive due process guarantee; any substantive due process claim was subsumed in plaintiff's more particularized allegations); Lozman v. City of Riviera Beach, 39 F. Supp. 3d 1392, 1413 (S.D. Fla. 2014) ("Plaintiff's substantive due process claim fails to the extent [it is] based on a First Amendment violation, because 'a cause of action cannot be based in substantive due process where a more specific constitutional provision is applicable,' and a 'substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim.'") (quoting Brandenburg v. Housing Authority of Irvine, 253 F.3d 891, 900 (6th Cir. 2001)) (first alteration in the original); Hinton v. Conner, 366 F. Supp. 2d 297 (M.D. N.C. 2005) (plaintiff's claim that city violated substantive due process rights of accountant, by taking adverse employment action in retaliation for her criticisms of funds disbursements operation, would be denied on grounds that it was duplicative of First Amendment claim she also made).

In sum, the allegations in the Complaint fail to set forth any plausible basis for establishing a violation of Plaintiff's substantive due process rights, making dismissal of Count IV appropriate. Because the aforementioend deficiencies cannot be remedied by way of further amendment, the dismissal of Count IV will be with prejudice.

Count III – First Amendment Retaliation

As noted, Count III of the Complaint sets forth a Section 1983 claim based on a theory of retaliatory prosecution in violation of Plaintiff's First Amendment speech rights. Specifically, Plaintiff alleges that Monahan initiated criminal proceedings against her "[i]n response to [her] legitimate request for public information" and "with the intent to deter [her] from participating at public meetings and requesting public information." (Compl. ¶ 52). Plaintiff claims that, as a result of Monahan's conduct, she "has been dissuaded from attending the regular public meetings

[of the Board of Supervisors] and has been dissuaded from pursuing her right to know public information and from engaging in her constitutionally protected right to free speech." Id. at ¶ 54.

To state a Section 1983 claim based on alleged retaliation for protected speech, a plaintiff must assert facts demonstrating: "(1) that [he] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Where, as here, the alleged retaliatory act is a criminal prosecution, the plaintiff must show that there was no probable cause to support the prosecution. See Chizmar v. Borough of Trafford, 454 F. App'x 100, 103 (3d Cir. 2011) (retaliatory prosecution claims require a plaintiff to show the absence of probable cause) (citing Hartman v. Moore, 547 U.S. 250, 265–66 (2006)).

Defendants object that no facts have been pled to show that the state police lacked probable cause to issue the disorderly conduct citation, but this argument misses the point. As Defendants recognize, the lack of probable cause is essential to show a causal connection between the protected speech and the retaliatory prosecution. (See Defs.' Br. Supp. Mot. Dismiss (Doc. 10) at 12 (citing Reichle v. Howards, 132 S. Ct. 2088, 2094 (2012) and Hartman v. Moore, 547 U.S. 250 (2006))). Since Monahan is the allege retaliator, Plaintiff must demonstrate an absence of probable cause from *his* (*i.e.*, Monahan's) standpoint, not the standpoint of the charging officer. Here, Plaintiff has adequately alleged facts from which it can plausibly be inferred that Monahan knew there was no probable cause to support a disorderly conduct charge against Plaintiff but lied about her conduct in order to fabricate the necessary

probable cause. (Compl. ¶¶ 27, 29-32, 36, 39, 41-42). These allegations are sufficient to establish a plausible basis for the requisite causal connection.

Defendants next object that Monahan did not take any adverse action against Plaintiff, since it was the state police that filed the citation and prosecuted the case. This argument fails to state a basis for dismissal of the claim. "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" Dombrosky v. Stewart, 555 F. App'x 195, 197 (3d Cir.2014) (quoting Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) and citing Crawford–El v. Britton, 523 U.S. 574, 589 n. 10 (1998)). As discussed, Plaintiff has alleged that Monahan (a) lied to the state police in order to fabricate a basis for filing the disorderly conduct charge as to which probable cause was otherwise lacking and (b) used his influence to pressure the state police into filing the charge. Plaintiff claims that, as a result of the citation being filed, she incurred legal expenses, suffered public humilation, and was dissuaded from attending public meetings, pursuing her right to know public information, and engaging in constitutionally protected speech. (Compl. ¶¶ 45, 54). These allegations are sufficient to demonstrate that Monahan undertook adverse action against Plaintiff that would be sufficient to deter a person of ordinary firmness from exercising his or her rights.

Finally, Defendants argue that the Complaint fails to plead constitutionally protected conduct. Citing Lane v. Bonin, 772 F. Supp. 2d 678, 685 (W.D. Pa. 2011), Defendants argue that Plaintiff's alleged act of speaking out on "matters related to [her] father," (Compl. ¶ 51), shows that the subject speech was of a personal nature and outside the protections of the First Amendment. (See Defs.' Br. Supp. Mot. Dismiss at 12).

This objection is misplaced. In <u>Lane</u>, the district court evaluated the viability of a First Amendment retaliation claim that arose in the context of an employer-employee relationship by utilizing the following three-step framework:

> (1) the employee must demonstrate that his/her speech is protected, that is, it addresses a matter of public concern and the employee's interest in speech outweighs the employer's countervailing interest in promoting workplace efficiency and avoiding workplace disruption (i.e., the balancing test established in <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (U.S.1968));

> (2) the employee must prove by a preponderance of the evidence that his/her speech was a substantial motivating factor in the retaliatory action against him/her;

> (3) the burden is then shifted to the employer, who may defeat the claim if it can prove by a preponderance of the evidence that the allegedly retaliatory action would have been taken absent the protected speech.[ ]

<u>Lane</u>, 772 F. Supp. 2d at 683 (footnote omitted) (citing authority). Defendants apparently seek to have this Court apply the same line of analysis here, particularly the first prong, and conclude that Plaintiff's speech is not constitutionally protected. Importantly, however, the foregoing framework does not apply to the circumstances of this case, where there was no employment relationship between the Plaintiff and the Defendant. <u>See</u>, <u>e.g.</u>, <u>Eichenlaub v. Township of Indiana</u>, 385 F.3d 274, 283 (3d Cir. 2004) (noting that "[t]he 'public concern' test was formulated by the Supreme Court in addressing speech restrictions placed by governmental entities on their own public employees,"; in doing so, the Court "approached public employee speech . . . as a balance between the rights those employees enjoy as citizens and the obligations they bear as loyal employees"); <u>Burnham v. Ianni</u>, 119 F.3d 668, 678 (8th Cir. 1997) (noting that the <u>Pickering</u> standard applies to determinations of whether a public employer has properly discharged or disciplined an employee for engaging in speech) (citing authority).

Outside of the public employment context, the First Amendment affords broad protection to the speech of private individuals. See Eichenlaub, 385 F.3d at 282-83 ("We begin with the proposition that, except for certain narrow categories deemed unworthy of full First Amendment protection – such as obscenity, 'fighting words' and libel – all speech is protected by the First Amendment.") (quoting R.A.V. v. St. Paul, 505 U.S. 377, 382–90 (1992)). "That protection includes private expression not related to matters of public concern." Id. (citing Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 760 (1995); Connick v. Myers, 461 U.S. 138, 147 (1983); and United Mine Workers of Am. Dist. 12 v. Ill. State Bar Ass'n, 389 U.S. 217, 223 (1967)); see also S.K. v. N. Allegheny Sch. Dist., No. 2:14CV1156, 2016 WL 806483, at *13 (W.D. Pa. Mar. 2, 2016) (noting that "First Amendment protection would be available regardless of whether the complaints on plaintiff's behalf are viewed as touching on a matter of private or public concern").

In this case, Plaintiff has alleged that Monahan retaliated against her because of her inquiries about a much publicized investigation that Monahan had launched into matters related to Plaintiff's father. (Compl. ¶¶ 51-52). Plaintiff's inquiries would appear to fall within the protections of the First Amendment. Consequently, as Defendants have not demonstrated any basis for dismissing Plaintiff's First Amendment retaliation claim against Monahan, that claim may proceed.

Municipal Liability Claims Under § 1983

Each of Plaintiff's Section 1983 claims is asserted against the Township as well as against Monahan. It is well established that, in order to establish a municipality's liability under Section 1983, a predicate constitutional violation must be shown to exist. Zimmerlink v. Zapotsky, 539 F. App'x 45, 50–51 (3d Cir. 2013) (where no § 1983 claims against the individual

defendants survived, municipal liability claims were properly dismissed) (citing Williams v. West Chester, 891 F.2d 458, 467 (3d Cir. 1989)). At this point, the only surviving Section 1983 claim is Plaintiff's First Amendment retaliation claim. Consequently, the Court must consider whether Plaintiff has alleged facts that demonstrate a plausible basis for municipal liablity relative to this claim.

It is well established that a local government cannot be held liable under Section 1983 for the official acts of its employees under a theory of respondeat superior; rather, liability can exist only where there is "'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214-15 (3d Cir. 2001) (quoting Canton v. Harris, 489 U.S. 378, 385 (1989)) (noting also that "[t]he requirement that liability rest on a direct causal link between the municipal policy or custom and the alleged constitutional deprivation precludes respondeat-superior liability"). Such a link can be established in one of three ways:

> [f]irst, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).

In McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009), the Court of Appeals for the Third Circuit held in the municipal liability context that, for a "policy" or "custom" claim to survive a motion to dismiss in post-Twombly Section 1983 pleadings, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." Id. (affirming district court's dismissal of complaint because it "g[ave] no notice as to the Defendant[ ]'s improper

conduct, simply alleg[ing] that [plaintiff's] rights were violated due to the City's policy of ignoring First Amendment right[s.]") (internal quotations omitted).

In this case, Plaintiff alleges that Monahan engaged in a course of conduct whereby he "[r]epeatedly and continually bull[ied] Plaintiff and her family members in public meetings with the intent to stifle their right to participate in local government." (Compl. ¶ 19(r); see also Compl. ¶¶ 22-23 (alleging the Plaintiff regularly attended Township meetings and sometimes participated in the public comment portion of the meetings but, "[o]n all occasions, Defendant Monahan assumed a confrontational tenor with Plaintiff in an attempt to bully Plaintiff from participating . . . and . . . asking questions")). In addition, Plaintiff avers that "[t]he actions of Defendant Monahan to stifle Plaintiff and her family" were "acquiesced to by the Board and Township" and "a well settled practice constituting a standard operating procedure of the Township." (Id. at ¶ 20). Plaintiff claims that, because it was "[f]aced with continuing conflict at public meetings," the Township "knew it should have trained its Supervisors to protect itself against committing constitutional violations," but it was "deliberately indifferent to [the] fact that a violation of the Plaintiff's federally protected rights to free speech . . . was a highly predictable consequence of the inadequate training of Township personnel and elected officials." (Id. at ¶ 21). Plaintiff's factual averments also support a reasonable inference that Monahan and the other Supervisors were "policymakers" relative to the manner in which Township meetings were conducted. (Id. at ¶¶ 6, 19(r), 20-23).

For present purposes, the Court finds Plaintiff's allegations minimally sufficient to state a plausible basis for muncipal liability relative to Plaintiff's First Amendment retaliation claim. Although the viability of Plaintiff's theory ultimately will have to be tested on a more fully developed record, Plaintiff has alleged sufficient factual content to raise a reasonable expectation

that discovery will lead to evidence supportive of her muncipal liability claim. See Twombly, 550 U.S. at 563 n. 8. Accordingly, Defendants' motion to dismiss will be denied insofar as it relates to Plaintiff's Section 1983 claim in Count III against Monahan and the Township.

No Punitive Damages Against Township under § 1983

In their motion to dismiss, Defendants seek to have the Court strike Plaintiff's claim for punitive damages as it relates to Counts I, III and IV. It is well established that "a municipality is immune from punitive damages under 42 U.S.C. § 1983," Newport v. Fact Concerts, 453 U.S. 247, 271 (1981), and Plaintiff does not appear to argue otherwise in her brief in opposition to Defendants' motion. Accordingly, the Court will grant the motion as it relates to Plaintiff's claims for punitive damages against the Township.

Count II – Abuse of Process

In Count II of the Complaint, Plaintiff asserts a claim for abuse of process under Pennsylvania common law. Defendants assert that the Township is immune from damages relative to this claim. They further argue that no facts have been pled to demonstrate an abuse of process. This Court agrees.

The Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA") provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541. The PPSTCA immunizes local agencies from state law tort claims, subject to certain exceptions that are not applicable here. See 42 Pa. Cons.Stat. Ann. §§ 8541–42. Because Monongahela Township qualifies as a local agency under the PPSTCA, it has immunity under the statute relative to Count II of the Complaint. See Zlomsowitch v. E. Penn Twp., No. 3:11-CV-2131, 2012 WL 1569633, at *3 (M.D. Pa. May 3, 2012) (dismissing state law malicious

21

prosecution and abuse of process claims against the defendant township "because it is immune from suit under the PPSTCA"); Roskos v. Sugarloaf Twp., 295 F. Supp. 2d 480, 489-90 (M.D. Pa. 2003) ("Section 8550 exposes the employees of a local agency to personal liability upon a judicial determination that the employee's act constituted a 'crime, actual fraud, actual malice or willful misconduct' but does not impose liability on the local agency for such conduct.") (citing 42 Pa.C.S.A. § 8550 and Steiner v. City of Pittsburgh, 509 A.2d 1368, 1370 (Pa. Commw. Ct. 1986)).[3]

In addition, the Court agrees with Defendants that Count II fails to plead facts showing an abuse of process. "'The tort of abuse of process is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" Snook v. Midd-W. Sch. Dist., No. 4:14-CV-948, 2015 WL 1209897, at *6 (M.D. Pa. Mar. 16, 2015) (quoting Rosen v. Am. Bank of Rolla, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting Restatement (Second) of Torts, § 682)). In order to prevail on an abuse of process claim, "the plaintiff must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." Id. (quoting Lerner v. Lerner, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008)). The plaintiff must also demonstrate harm as a result of the abuse of process. Id. (citing Rosen, 627 A.2d at 192). "'[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" Id. (quoting Lerner, 954 A.2d at 1238).

Pennsylvania law distinguishes between the torts of abuse of process and malicious prosecution as follows:

---

[3] Under the PPSTCA, the Township also is immune from damages under a state law theory of malicious prosecution, should Plaintiff seek to assert such a claim in her amended pleading.

> [A] malicious prosecution claim has to do with the wrongful initiation of the legal process, i.e., without probable cause and with a bad motive, whereas abuse of process arises when a prosecution is initiated legitimately but "thereafter is used for a purpose other than that intended by law." Napier v. City of New Castle, No. 06–1368, 2007 WL 1965296, at *6 (W.D.Pa. July 3, 2007) (quoting Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir.1977)), aff'd, 407 F. App'x 578 (3d Cir.2010); see also Rosen, 627 A.2d at 192.
>
> While the two torts are not mutually exclusive, and both torts may have occurred where a process is both wrongfully initiated and thereafter perverted for some unlawful purpose, merely continuing to pursue a claim that was initiated with malice does not transform a malicious prosecution claim into an action for abuse of process. See Jennings, 567 F.2d at 1218–19; Evans v. Durham Life Ins. Co., No. 00–281, 2001 WL 770803, at *2 (E.D. Pa. 2001).
>
> When a plaintiff's complained-of injuries occurred in connection with the initial filing of criminal charges and arrest, those injuries constitute malicious prosecution, not abuse of process. Napier, 407 F. App'x at 582; see also Barnett v. York Cnty., No. 11–0906, 2011 WL 2790467, at *20 (M.D.Pa. June 24, 2011), report and recommendation adopted, 2011 WL 2791320 (M.D.Pa. July 14, 2011).

Giordano v. Murano-Nix, No. CIV.A. 12-7034, 2014 WL 62459, at *12-13 (E.D. Pa. Jan. 8, 2014). Accordingly, "while the term 'process,' when used in the tort of abuse of process 'has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process,' including discovery proceedings, the noticing of depositions and the issuing of subpoenas, . . . it cannot be extended to include actions by Defendants in merely referring a matter to a district attorney." Snook, 2015 WL 1209897, at *6 (internal citation omitted).

Here, Plaintiff alleges only that "the purpose of the legal process employed by Defendants against [her] was to stifle and intimidate [her] and to inflict further damage upon Jim Rumble by prosecuting his daughter and not for its intended purpose of prosecuting criminal activity." (Compl. ¶ 48). The misconduct underlying Count II does not involve process being perverted *after* it was already underway; rather, the alleged misconduct involves the wrongful initiation of criminal proceedings for a malicious purpose. Accordingly, Plaintiff has not pled facts demonstrating an abuse of process, and a dismissal of Count II is therefore appropriate.

<u>Defendants' Motion to Strike</u>

Finally, Defendants move to strike Paragraphs 10 through 18 and 19(a) through (q) of the Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. The averments in question concern actions that were allegedly undertaken by Monahan against Plaintiff's father and sister pursuant to a "years-long smear campaign." (Compl. ¶ 15). Defendants contend that these averments are immaterial to the claims in the Complaint, all of which arise from Monahan's actions in connection with the October 6, 2014 Township meeting and the ensuing criminal citation. Defendants maintain that "[t]he sole purpose of including these additional allegations into the Complaint is to weave a story that confuses the real issue before the court and jury and, ultimately to prejudice Mr. Monahan before the fact-finder." (Defs.' Br. Supp. Mot. Dismiss (Doc. 10) at 16).

Rule 12(f) of the Federal Rules of Civil Procedure permits a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts have "'considerable discretion in disposing of a motion to strike under Rule 12(f).'" <u>Cottillion v. United Ref. Co</u>., No. CIV.A. 09-140, 2014 WL 1207527, at *3 (W.D. Pa. Mar. 24, 2014)(quoting <u>Dela Cruz v. Piccari Press</u>, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007)). As a general matter, however, motions to strike are disfavored, <u>United States v. 0.28 Acre of Land, More or Less, Situate in Washington Cty., Penn</u>., No. 09CV0583, 2009 WL 4408194, at *2 (W.D. Pa. Nov. 25, 2009) (citation omitted), and should be granted "only when 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" <u>Allied Dental Grp., Ltd. v. State Farm Fire & Cas. Co</u>., No. CIV.A. 12-1637, 2013 WL 5436948, at *3 (W.D. Pa. Sept. 27, 2013) (quoting <u>Medevac MidAtlantic v. Keystone Mercy Health Plan</u>, 817 F.Supp.2d 515, 520 (E.D.Pa. 2011)).

"Indeed, striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice and should be used sparingly." Spiess v. Pocono Mountain Reg'l Police Dep't, No. 3:10CV287, 2011 WL 662977, at *1 (M.D. Pa. Feb. 14, 2011) (citation and internal quotation marks omitted).

Based on the foregoing considerations, and given the generally disfavored status of motions to strike, the Defendants' motion will be denied. Although the challenged averments do not strictly relate to the Plaintiff's claims against Monahan based on the events of October 6, 2014, they arguably are relevant to Plaintiffs' municipal liability claim to the extent they support an inference that the Township tolerated a "custom" or "practice" of attempting to discourage Plaintiff's family members from participating in local government affairs and/or to the extent they demonstrate a motive for Monahan's alleged misconduct. Although Defendants express concern that the challenged allegations might unfairly prejudice Monahan in the eyes of a jury, such concern is premature at this stage and, in any event, the Court is confident that any potential prejudice can be alleviated through appropriate pretrial orders. Defendants also express concern that the challenged averments will create confusion, but there is nothing unusually complicated about Plaintiff's allegations or legal theories as would warrant striking the challenged portions of the Complaint. Again, the Court is confident that any potential for confusion can be mitigated through appropriate orders on motions in limine and/or jury instructions, should the case proceed to that juncture. Defendants' motion to strike will therefore be denied.

## II.   ORDER

Consistent with the foregoing, the Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule 12(b)(6) or, in the Alternative, Motion to Strike Portions of the Complaint Pursuant to Federal Rule 12(f) (Doc. 9) will be **GRANTED IN PART** and **DENIED**

**IN PART**.  With regard to Plaintiff's First Amendment retaliation claim in Count III of the Complaint, the Motion to Dismiss (Doc. 9) will be DENIED as that claim relates to Defendants Monahan and Monongahela Township.  In every other respect, the Motion (Doc. 9) will be **GRANTED**.

The following claims are hereby **DISMISSED WITH PREJUDICE:**  all of Plaintiff's claims against the Monongahela Township Board of Supervisors as set forth in Counts I through IV of the Complaint; Plaintiff's substantive due process claim in Count IV of the Complaint as it relates to all Defendants; Plaintiff's claim under Section 1983 for punitive damages against Monongahela Township; and Plaintiff's abuse of process claim in Count II of the Complaint as it relates to Defendant Monongahela Township.  The following claims are **DISMISSED WITHOUT PREJUDICE:**  Plaintiff's Section 1983 claims against Defendant Monahan and Monongahela Township for malicious prosecution (Count I); and Plaintiff's claim against Defendant Monahan for abuse of process (Count II).  Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, **Plaintiff may file an amended pleading as a matter of course on or before March 23, 2016, consistent with the principles discussed herein and the mandates of Rule 11.  Failure to file an amended complaint by this date will result in these claims being dismissed with prejudice.**

Defendants' Motion, in the Alternative, to Strike Portions of the Complaint Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure (Doc. 9) is **DENIED**.

IT IS SO ORDERED.


March 15, 2016                                                    s/Cathy Bissoon
                                                                 Cathy Bissoon
                                                                 United States District Judge

cc (via ECF email notification):
All Counsel of Record